IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE

Assigned on Briefs February 1, 2011 at Jackson

**NABEEH JAMEEL MATEEN v. STATE OF TENNESSEE**

**Appeal from the Criminal Court for Davidson County**
**No. 2005-A-650      Steve R. Dozier, Judge**

**No. M2010-00423-CCA-R3-PC - Filed May 5, 2011**

The petitioner, Nabeeh Jameel Mateen, appeals the denial of his petition for post-conviction relief from his especially aggravated robbery conviction, arguing that he received the ineffective assistance of counsel. Following our review, we affirm the denial of the petition.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the Court, in which JERRY L. SMITH and NORMA MCGEE OGLE, JJ., joined.

Nathaniel Colburn (on appeal) and George Duzane (at hearing), Nashville, Tennessee, for the appellant, Nabeeh Jameel Mateen.

Robert E. Cooper, Jr., Attorney General and Reporter; Lacy Wilber, Assistant Attorney General; Victor S. Johnson, III, District Attorney General; and Pamela Anderson, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**FACTS**

The petitioner was convicted of especially aggravated robbery by a Davidson County Criminal Court jury and sentenced to forty years at 100% in the Tennessee Department of Correction. This court affirmed his conviction and sentence on direct appeal, and the Tennessee Supreme Court denied permission to appeal. See State v. Nabeeh Jameel Mateen, No. M2006-02295-CCA-R3-CD, 2008 WL 1904250 (Tenn. Crim. App. May 1, 2008), perm. to appeal denied (Tenn. Dec. 8, 2008).

Our direct appeal opinion reveals that the petitioner's conviction arose out of his involvement in the robbery, shooting, and running over of Rachel Browning, the victim, the morning of February 7, 2004. Id. at *1-2. Neighbors of the victim, who observed various portions of the incident, described that the assailant was wearing a "poofy jacket," a hooded sweatshirt with the hood pulled up, gloves, and "bag-sag" jeans. Id. Approximately a week prior to the incident, the defendant, with whom the victim had a business and romantic relationship, asked the victim for $1000 which the victim refused to give him. Id. at *3. The next time the victim saw the defendant was the night before the shooting when she was working at the nightclub she owned, and the defendant arranged to meet her at her home after she closed the club. When the victim arrived home around dawn and was removing her belongings from her car, she saw a gray, hooded sweatshirt, heard a loud noise, and remembered nothing thereafter until she woke up in the hospital. The victim could not identify the person who shot her. Id.

The State's primary witnesses against the defendant was Michael Scott, a friend of the defendant, who testified that he was with the defendant sometime after the shooting when the defendant told Scott that he had set up the victim to be robbed by telling some other people to follow her after she left the club and that those people had shot her. Scott testified that the defendant later told him over the telephone that someone named "Jazz" shot the victim. Id. at *5. The victim's and the defendant's cell phone records were introduced at the trial. The records showed a number of calls between the victim and the defendant between 4:23 a.m. and 6:08 a.m. the morning of the shooting, as well as calls from the victim to a Styles Camp. The defendant's records showed, among other things, calls to and from a Jermaine Hyler around the same time period. The location of the telephone towers used during the calls reflected that a 6:06 a.m. call by Hyler was received at a tower in the part of town where the victim lived. Id. at *6.

The petitioner filed a timely *pro se* petition for post-conviction relief, and after the appointment of counsel, an amended petition was filed. The petitioner requested that his attorney be relieved, and new counsel was appointed and filed another amended petition. In his petitions, the petitioner raised various allegations of ineffective assistance of counsel.

The post-conviction court conducted an evidentiary hearing, at which the petitioner testified that his trial counsel only met with him approximately seven times for a total of two hours in preparation for trial. He and counsel "discussed some small issues" but did not talk about possible defenses. The petitioner said that there was a preliminary hearing in his case at which he was represented by another attorney. At that hearing, Michael Scott, who was the State's key witness at trial, testified that the petitioner had made a confession to him while they were in a vehicle together, but Scott could not remember whose car they were in, where they had been, where they were going, or what they were wearing. However, at trial,

Scott remembered who had been driving in addition to "a lot of other stories that had changed from the story that he stated in the preliminary hearing." The petitioner stated that he asked counsel to obtain a transcript of the preliminary hearing.

The petitioner testified that, at the preliminary hearing, Scott also stated that he "wanted [the petitioner] to take a charge, a dope charge that he claimed that [the petitioner] supposedly left some drugs . . . in his car[.]" Scott said that, in addition, he wanted the petitioner to pay to get his car out of impound and pay for his attorney. Scott stated at the hearing that he was presently mad at the petitioner. The petitioner testified, however, that none of those things came out at trial.

The petitioner testified that Scott also testified at the preliminary hearing that the petitioner had made another confession over the jailhouse phone. The petitioner said that he did not get a copy of that phone conversation, and he could not recall whether he brought the matter to counsel's attention. The petitioner further alleged that Crystal Parnam was his alibi witness, which he informed counsel "[n]umerous times" and asked to have her subpoenaed, but Parnam did not testify at trial.

The petitioner testified that he was not in possession of his cell phone the morning of the incident, and he asked counsel to investigate the whereabouts of his phone through the use of a private investigator, but counsel told him that "a private investigator is going to cost a lot of money. You can barely afford me right now." The petitioner testified that counsel represented him on direct appeal, and he alleged that counsel never met with him to discuss the issues he wished to raise.

On cross-examination, the petitioner denied having a conversation with the victim shortly before the incident in person at the nightclub or on the phone. He admitted that he had sexual relations with the victim on several occasions but stated that he did not know the victim's voice over the phone. The petitioner denied that he was supposed to meet the victim for sexual relations the morning of the incident.

The petitioner acknowledged that Crystal Parnam was his girlfriend at the time of the incident, and she met with counsel on several occasions and made partial payments toward his attorney's fees. However, a few weeks prior to trial, Parnam disappeared, and counsel was unable to locate her. The petitioner denied that he possessed his cell phone around the time of the incident, claiming that he told counsel that his friend, Mervin Harvell, had his phone at the time.

Counsel testified that he was retained by the petitioner to represent him at trial. Counsel discussed the elements of the charged offenses with the petitioner, as well as the

possible defenses he might have. He met with the petitioner six or seven times at the jail during the pendency of the case and whenever the petitioner came to the courthouse on his court dates. He said that some of their conversations could have been as short as fifteen minutes and others more than thirty minutes, but their meetings were "way more than an hour any time that [they] met within two weeks of trial."

Counsel testified that he obtained a copy of the preliminary hearing tape within one month from the time he was retained by the petitioner. Counsel listened to the tape and made notes, but he did not see any reason to have it transcribed. Counsel learned from listening to the tape that the State was prolonging a hearing on a probation violation on Michael Scott until after Scott testified at the petitioner's trial and learned that Scott had a felony drug charge pending.

Counsel testified that he talked to the petitioner about Scott's allegation that the petitioner had confessed to the crime while they were in a vehicle, but neither the petitioner nor Scott could remember whose vehicle they were in when the conversation took place. Counsel said that Scott's testimony at trial was different than that at the preliminary hearing "[i]n some minor ways," but there was nothing from the hearing that counsel could use to cross-examine Scott because it was not "vastly different." Counsel said that he cross-examined Scott regarding any "material" inconsistencies in his testimony, and he believed that his cross-examination was "thorough."

Counsel testified that he learned about some jailhouse telephone calls between the petitioner and Scott that had taken place, but he did not file a motion to obtain a transcript of the telephone calls because "after just a few months those calls are erased. And by the time [he] was retained . . ., that time had long passed. . . . They were not going to be obtainable." Counsel said that he was "sure" he discussed with the prosecutors whether they had a transcription of the jailhouse calls, "but neither of them had a transcript of it." However, counsel did not make a request in writing or go to the jail to investigate whether the sheriff's department still had the tapes of the conversation. In addition, counsel attempted to talk to Michael Scott before the trial, but he "was not given access to [Scott] by his attorney."

Counsel stated that he met with Crystal Parnam once or twice a month for a total of six to eight times. He interviewed her and she said there was an alibi, but counsel did not "know whether there was one or not." The petitioner asked counsel to file a notice of alibi witness, but he did not do so "because [the alibi witness, Parnam,] disappeared a few weeks before the trial," and he did not know how to locate her. Counsel attempted to locate Parnam by calling her, but he discovered that her number was longer valid. He also drove by an address where she said she had lived for a period of time, but no one was home. The

-4-

petitioner was unable to give him any additional contact information that counsel did not have already. Counsel recalled that the petitioner told him that Parnam had "found a new boyfriend and had moved on from their relationship."

Counsel testified that he did not visit with the petitioner in preparation of the appeal, but he sent letters to the petitioner throughout the appellate process. However, counsel and the petitioner discussed issues in preparation for the motion for new trial, and the petitioner did not mention any additional issues that he wanted to raise. The petitioner never wrote counsel to say that he thought of additional issues he wanted to include on appeal. Counsel said that he would have included other issues in the appellate brief if he thought they had merit.

In denying the petitioner post-conviction relief, the court accredited the testimony of counsel that he met with the petitioner on several occasions to discuss trial strategy and had thoroughly investigated the petitioner's case by meeting with witnesses. The court observed that Crystal Parnam was not called as a witness at the evidentiary hearing, nor was there any showing of the validity of the claimed alibi. Therefore, the petitioner failed to prove that counsel was ineffective for not calling Parnam to testify at trial. The court noted the phone usage of the various actors was very incriminating at trial, but at the evidentiary hearing, there was "no proof . . . submitted as to who possessed the petitioner's phone during the critical time of these events." The court found, therefore, that counsel could not "be blamed for not presenting proof to the contrary if it did not exist."

## ANALYSIS

The petitioner argues on appeal that counsel rendered ineffective assistance because he failed to adequately investigate the petitioner's alibi defense and subpoena his alibi witness; failed to investigate who possessed the petitioner's phone at the time of the incident; failed to obtain a transcript of Michael Scott's testimony at the preliminary hearing to use "for impeachment and substantive evidence"; failed to adequately confer with him prior to trial; and failed to meet with him in preparation of or raise sufficient challenges on appeal.

The post-conviction petitioner bears the burden of proving his allegations by clear and convincing evidence. See Tenn. Code Ann. § 40-30-110(f) (2006). When an evidentiary hearing is held in the post-conviction setting, the findings of fact made by the court are conclusive on appeal unless the evidence preponderates against them. See Tidwell v. State, 922 S.W.2d 497, 500 (Tenn. 1996). Where appellate review involves purely factual issues, the appellate court should not reweigh or reevaluate the evidence. See Henley v. State, 960 S.W.2d 572, 578 (Tenn. 1997). However, review of a trial court's application of

-5-

the law to the facts of the case is *de novo*, with no presumption of correctness.  See Ruff v. State, 978 S.W.2d 95, 96 (Tenn. 1998).  The issue of ineffective assistance of counsel, which presents mixed questions of fact and law, is reviewed *de novo*, with a presumption of correctness given only to the post-conviction court's findings of fact.  See Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001); State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999).

To establish a claim of ineffective assistance of counsel, the petitioner has the burden to show both that trial counsel's performance was deficient and that counsel's deficient performance prejudiced the outcome of the proceeding.  Strickland v. Washington, 466 U.S. 668, 687 (1984); see State v. Taylor, 968 S.W.2d 900, 905 (Tenn. Crim. App. 1997) (noting that same standard for determining ineffective assistance of counsel that is applied in federal cases also applies in Tennessee).  The Strickland standard is a two-prong test:

> First, the defendant must show that counsel's performance was deficient.  This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.  Second, the defendant must show that the deficient performance prejudiced the defense.  This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

466 U.S. at 687.

The deficient performance prong of the test is satisfied by showing that "counsel's acts or omissions were so serious as to fall below an objective standard of reasonableness under prevailing professional norms."  Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996) (citing Strickland, 466 U.S. at 688; Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975)).  The reviewing court must indulge a strong presumption that the conduct of counsel falls within the range of reasonable professional assistance, see Strickland, 466 U.S. at 690, and may not second-guess the tactical and strategic choices made by trial counsel unless those choices were uninformed because of inadequate preparation.  See Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982).  The prejudice prong of the test is satisfied by showing a reasonable probability, i.e., a "probability sufficient to undermine confidence in the outcome," that "but for counsel's unprofessional errors, the result of the proceeding would have been different."  Strickland, 466 U.S. at 694.

With regard to the petitioner's claim that counsel was ineffective for failing to adequately investigate his alibi defense and subpoena his alibi witness, the petitioner has failed to prove how he was prejudiced by any alleged deficiency.  As noted by the post-conviction court, the petitioner failed to offer any evidence as to the validity of his alibi or

call Crystal Parnam to testify at the evidentiary hearing as to what her testimony would have been at trial regarding the petitioner's alibi. To satisfy the prejudice requirement of Strickland when alleging that counsel was ineffective for failing to offer testimony from a favorable witness, the post-conviction petitioner must "(1) produce the witness at his post-conviction hearing; (2) show that through reasonable investigation, trial counsel could have located the witness; and (3) elicit both favorable and material testimony from the witness." Denton v. State, 945 S.W.2d 793, 802-03 (Tenn. Crim. App. 1996) (citing Black v. State, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990)). The petitioner failed to make this showing.

With regard to the petitioner's claim that counsel was ineffective for failing to investigate who possessed his phone at the time of the incident, the petitioner has, again, failed to prove how he was prejudiced by any alleged deficiency. Although the petitioner maintained at the evidentiary hearing that Mervin Harvell had his phone at the time of the offense, the petitioner put on no proof that Harvell, or someone else, indeed had the petitioner's phone. As observed by the post-conviction court, counsel "cannot be blamed for not presenting proof to the contrary if it did not exist."

With regard to the petitioner's claim that counsel failed to obtain a transcript of Michael Scott's testimony at the preliminary hearing to use "for impeachment and substantive evidence," counsel testified that he obtained an audiotape copy of the preliminary hearing within one month from the time he was retained by the petitioner. Counsel listened to the tape and from it learned that the State was prolonging a hearing on Michael Scott's probation violation until after Scott testified at the petitioner's trial. Counsel also learned that Scott had a pending felony drug charge. Counsel testified that after he listened to the tape, he did not see any reason to have the hearing transcribed or he would have done so. Counsel did not think that Scott's testimony at trial was "vastly different" from his preliminary hearing testimony, consisting only of "minor" discrepancies. In any event, counsel believed that his cross-examination of Scott was thorough. We, as did the post-conviction court, have reviewed the transcript of the preliminary hearing provided by the petitioner. We fail to see how the petitioner received ineffective assistance due to counsel's not obtaining a transcript of the preliminary hearing with which to cross-examine Scott regarding the minor discrepancies pointed out by the petitioner, when Scott's extensive criminal history, his several month delay in informing the authorities of the petitioner's statements, and his hopes of receiving favorable consideration by the prosecution with regard to his own cases were brought before the jury.

With regard to the petitioner's claim that counsel failed to adequately confer with him prior to trial, counsel testified that he met with the petitioner six or seven times at the jail in addition to the times the petitioner was at the courthouse for various appearances. Counsel

said that their conversations ranged from fifteen to more than thirty minutes, with their meetings in the two weeks leading up to trial being more than an hour. Counsel stated that, at these meetings, he discussed the elements of the charged offenses with the petitioner, as well as the possible defenses the petitioner might have. The post-conviction court accredited counsel's testimony at the evidentiary hearing; therefore, the petitioner has failed to prove that counsel rendered deficient performance.

The petitioner's final claim is that counsel provided ineffective assistance with regard to his handling of the appeal. Specifically, he argues that counsel failed to meet with him in preparation or raise challenges that a robbery occurred, a deadly weapon was used, or that the offense was a carjacking as opposed to an aggravated robbery. Counsel testified that he and the petitioner discussed issues in preparation for the motion for new trial, and the petitioner did not ask counsel to include any additional issues. Counsel said that the petitioner never wrote him to say that he thought of additional issues he wanted to include on appeal. Counsel stated that he would have included other issues in the appellate brief if he thought they had merit, but he was ethically precluded from raising issues that were not meritorious. The petitioner has failed to prove that there would have been any merit to the challenges he now claims counsel should have made. Moreover, we fail to see any deficiency in counsel's performance. Even though counsel did not meet with the petitioner specifically in preparation of the appeal, they discussed issues in preparation for the motion for new trial, and counsel kept in correspondence with the petitioner during the appellate process.

## CONCLUSION

Based on the foregoing authorities and reasoning, we affirm the post-conviction court's denial of the petition.

_____
ALAN E. GLENN, JUDGE